May it please the Court, Jesse Cripps on behalf of the petitioner among the client. You may or may have not already met my colleague, Mr. Taggart, who will be arguing with me. We'll do our best to split our time and answer your questions. This is a case in which the record bears out that there is no finding of a criminal conviction of this individual, no finding of misconduct by the IJ. Could I shake your voice up a little bit? I will do that. A little playground voice, sir. I will use my playground voice. I can barely hear you. There's no evidence of any misconduct on behalf of the petitioner, no evidence of any unreasonable delay on his part, no evidence of even prejudice to the government in his request for a continuance in this case. In fact, the record bears out that the government didn't even oppose his request for a continuance in the record. But notwithstanding that fact, the IJ chose to summarily deny his request for a continuance without giving any consideration whatsoever to the relative merits of the petition that was pending before the Administrative Appeals Office. Without any finding of any of that. I'm sorry. Can I ask you this? The IJ in this case summarily denied the continuance, as you said, and did not give any reason. So that's a separate issue that the government is going to have to address. But had the IJ simply said, as a matter of general practice, I don't think that I'm required to continue every hearing just because somebody has an appeal of a denial of an I-140 application. And for that reason, I'm denying the continuance. If those were our facts, would you be here? Your Honor, I actually think that had she done that, we'd still be here, because there are a number of other factors under the BEARS analysis that have been in place for 20 years that the IJ is required to consider. And those factors are heightened, I believe, as the Bogdan Court in the Sixth Circuit pointed out, when the government doesn't oppose a continuance. It only underscores the need for a continuation. Right. But are you arguing that any time someone has an I-140 petition, which was denied at the administrative level and has a pending appeal, that it's an abuse of discretion for the IJ to deny a continuance? Absolutely not. I think what the cases bear out is that there is no inflexible rule that's imposed upon immigration judges. Immigration judges have the discretion to determine whether or not a petition that's pending is frivolous, filed in God's favor. Okay. And the problem here is that we have no idea what the IJ was thinking. That's exactly right. In fact, although the IJ was handed a copy of the denial, the denial was never even made part of the administrative record. We have no comfort in this case that the IJ gave any consideration to the reasons that the I-140 was initially denied, whether or not the I-140 was the basis for the appeal of the I-140 to the Administrative Appeals Office. And in this case, what you have are benefits bestowed upon this individual by the regulatory and statutory process that's in place that he was – that were cut off as a result of the immigration judge's decision. How long does this usually go on, the application for the I – for the 140? What is it, the I-140? To the Administrative Appeals Office. At that point in time, we checked the Administrative Appeals Office, and admittedly, the time varies in terms of the backlog there. But at that time, they were estimating a nine-month backlog and that the decisions would take nine months. Now here we stand, four years later, a government that's seeking to remove this individual, a government that at the time didn't even oppose a continuance, to allow that appeal to run its course. So now we're four years later and we still don't have a decision. That's right. And we're not asking or advocating for a bright-line rule that we would need to – that an IJA needs to wait four years for that administrative process to run its course. I understand. Some consideration has to be given under the BEARS analysis. We feel, to the nature of the evidence, that the petitioner is seeking to advocate. And if it – if I can indulge the Court, I'd like to allow my colleague to address some of the other arguments that the government has raised, reserving some of our time. May it please the Court, briefly, if you'll indulge me. I'd just like to address some of the arguments raised in the government's brief concerning exhaustion. The government makes much of the fact that the record did not contain a copy of the I-140 denial or documents related to the appeal of the I-140 denial. But at the same time, the IJA made a final fact, both in the hearing transcript and in her oral opinion, which of course was written, that the I-140 had been denied and that it was under appeal. So I think it's fair to say that that's very much part of the record. And I think also the IJA took judicial notice of the appeal by saying that she would not keep the mat on her calendar pending the adjudication by the Administrative Appeals Office of the appeal of the I-140 denial. And of course, in the alternative, were this Court inclined to take judicial notice under Federal Rule of Evidence 201B, it would be more than empowered to do so. In a recent case, the law bears that out. As to the thrust of the government's exhaustion arguments, the government claims that Petitioner failed to raise the bears factors in the underlying briefing before the BIA. But the Petitioner's BIA brief specifically said that the continuance could not be denied in the language of Bull solely because the petition had not yet been approved. The BIA brief even sided to Bull v. INS. This is the Eleventh Circuit decision, very similar to this case, which involves the same types of case-by-case considerations recommended by the bears decision from the Ninth Circuit. Your argument is that the BIA considered the issue and, therefore, it has been exhausted? Correct. Correct, Your Honor. And I think that's the standard for savering. So I can just briefly dispense with the remaining exhaustion arguments. Good. The failure to give a reasoned decision, of course, is essentially the same argument that we would make with respect to the bears factors. The government also made much of the immediate availability of visas under 1255A2B in the statute. Of course, that was expressly a part of the BIA's Bourbon decision, which is in the record at page 2. And, finally, we have, as in many immigration appeals, the denial of due process of the Fifth Amendment in the form of a full and fair hearing. The BIA said that it found nothing in the record to establish the respondent was deprived of a full and fair hearing. So, of course, that issue was exhausted as well. I think that the government's exhaustion arguments, which are the first arguments they make in their brief, reflect their discomfort with the record and with the law on this appeal. Judge Fogle said before that he was concerned, and I think appropriately so, about drawing bright-line rules that petitioners might be entitled, in all cases, to a continuance where there was an internal agency appeal pending. I think we would look back to bears, which recommends a case-by-case analysis in light of the merits. There was no evaluation of the relative merits by the IJ. And, in fact, the IJ said at the conclusion of the hearing, almost derisively, good luck with that appeal. The government refers to the internal agency appeal process, which, of course, is within the same agency, as a collateral adjudication. I think if we presume that internal agency appeals are not themselves an exercise in futility, they're anything but collateral, particularly in the context of what used to be called a deportation proceeding, now euphemistically removal. But the consequences are the same and very severe, of course, for the petitioner. One of the things that concerns me, and I even see this at the district court level, it takes years, as it has in this case sometimes, for these internal processes to work their way out. And that puts a burden on the immigration judges. If they're asked to continue matters while these internal processes are pending, it could be a really long time. So how do you – it's one thing to say they didn't give any reasons at all, and that in itself is a violation of the rules. But if we send the case back and say, all right, now exercise your discretion and tell us how you're exercising it, and the judge says it's going to take three years or four years for this appeal to be heard, and I don't want to keep the case on my docket for that long because et cetera, et cetera, et cetera. It's still abuse of discretion standard, isn't it, at that point? Yes, absolutely. It is, Your Honor. And I can't speak for what the IJ may do. I think that the exercise of discretion provides for great latitude by immigration judges, and she would continue to have great latitude. I think Judge Posner's decision in Suman where he criticized the failure by the immigration judge in that case to exercise its discretion under somewhat similar circumstances, albeit the petitioner in this case actually had a labor certification, which is not nothing. I mean, it's an important first step in the process. But he said of the IJ's decision, the IJ could have found him deportable for any number of reasons. So we would just ask that Mr. Ahmed receive the hearing to which we believe he was entitled. So that's what you want us to do is to remand this back to the BIA for further proceedings so that the IJ can consider the things, whatever they are, that he should consider in exercising the discretion. Yes. Excuse me. That's it. Yes, Judge Thompson, I think that's correct. And I think in fairness, to consider the relative merits of the petition itself and the relative merits of the appeal. I mean, if he's going to be deported, we all know the permanent physical presence requirement. He's essentially ñ that's the end of the process for him. So let's just have a full consideration of the relative merits. Thank you very much. And where are the relevant factors? The relevant factors? I'm sorry? Where do we find this list of relevant factors? How do we know what they are? I think that would be in the appellate filing within the agency and, of course, looking to the initial denial of the I-140, which, as the government noted, was not part of the record here, so we don't have it before us. So the relevant factor you're talking about is consideration of the potential merits of the I-140. That's right, of the I-140 petition for the visa. Correct. Now, if the IJ in this case, then, were to consider that and then make a denial or whatever, you'd say, well, okay, we've got what we wanted, a consideration of that. Is that it? Or is there more? No, I think that's a full and fair hearing. I wouldn't want to prejudge the outcome. Yeah. But a full and fair hearing. That's what you're entitled to. You're not entitled to a particular outcome. You're entitled to a process. Precisely. Precisely. Okay. Thank you very much. All right. Thank you. Good morning, again. The petitioner has failed to demonstrate that the IJ abused our discretion in denying him further continuance. I'd like to address a few of the points mentioned by my opposing counsel. Some of the facts have gotten mixed up here, and I'd like to clarify them. Ahmed's visa petition had already been denied during his first hearing with the IJ here, and the IJ wasn't clear about that. She was told that it was still pending on February 1, 2005, and at that time granted a six-month continuance for a petitioner to see the outcome of the I-140. It wasn't until the second hearing where it was clarified by government counsel that the visa had actually already been denied, at which time she indicated that he had no form of relief at that point and thus denied him a further continuance. Thus, Ahmed has failed to demonstrate that there's good cause to grant a continuance as required under the regulations. He failed to establish prima facie eligibility for adjustment of status. I believe, Judge Thompson, you might have been getting to the factors. I would point to Garcia, the board's decision, as the relevant factors in granting a continuance in this situation, and those factors are a pending unadjudicated visa petition and a filed application for adjustment of status. Here, Ahmed has neither. Thus, the IJ wasn't required to exercise a favorable discretion. Also, if this is sent back, the IJ has no – it is not the IJ's burden to rule on the I-140. The regulations indicate that. They do not have a de novo review of an I-140. Thus, he might be – she might be able to grant another continuance to see if the appealed visa now can be – will be adjudicated or will be granted favorably. But at that point, again, as you mentioned, it's an abuse of discretion and she's not required. I'd also like to distinguish one of the cases of the Seventh Circuit that opposing counsel mentioned, Subhon. The facts and actions are extremely – There was an appeal on the I-140. It was – the visa was denied once already. Once. But there was an appeal. There was an appeal pending. Yeah. Within the Justice Department. DHS, right. Okay, I'd rather you – Yeah, that's all I'm saying. Okay, DHS. And they hadn't – the ruling had not come down on that appeal yet. Right. Okay. So what's the big hurry here? There's no hurry. What I'm trying to point out is that the standard for the Petitioner is that they have the burden to establish that they are statutory eligible and that they are deserving of a favorable exercise of discretion under this Court's case law, whether to grant the continuance and whether they have proved that they are prima facie eligible for adjustment of status. And at that point in the hearing, the IJ was correct in their ruling, as well as the Board, because they didn't prove those standards. They didn't meet that burden. Didn't they have to wait until they get a ruling on the appeal? No. Not at that point in the immigration hearings. The adjustment of status is separate from Petitioner's removal. That is a separate issue. Petitioner was still – it doesn't affect the finality of Petitioner's removal order. They were still removed. It only affected whether they had – they could wait to see whether the appeal now on a denied – already denied visa petition might be granted. What happens if she's – he – if he's removed and then the I-140 gets granted and he's now removed to where – to I don't know what country? Do they say, well, now you've got a visa, so come on back? I anticipated that might be a question from the panel. And they are not without any relief. The petitioner could file a motion to stay with the district court while they're trying to determine whether their I-140 appeal is – gets granted and take that avenue. I'm not going to recommend what Petitioner's counsel should do, but, I mean, there are avenues where they would, of course, not be removed. I'm sure that's a concern for them, that the visa would be granted perhaps and then they would not be in the country to get the visa. But there are avenues for Petitioner's counsel. In this case, though, the IJA didn't do anything wrong by not granting a further continuance. And – Did the IJA do anything wrong by not explaining why the continuance was denied? Their decision is scant, but I would suggest that in the record while she's going through the testimony, she says, oh, I thought this was a pending I-140, not already denied, and says, well, I'm not going to grant the continuance in that case. But the case law seems to require – I mean, the result isn't necessarily wrong. Right. But the case law seems to require that the judge explain why he or she is arriving at that particular result. Well, I think the IJA did explain and I think the Board went on to further explain, which both decisions need to be reviewed in this circumstance, that the denial of the visa – the already denied visa petition rebutted a prima facie eligibility – approvability, and that in the absence of an argument that that denial – what reason that denial might – was wrong or why the – that decision was incorrect, that there was no likelihood of the appeal being overturned. And thus, the case didn't need to be continued. And I'd refer to our brief, which indicates a case which is very much similar to the facts of this case in the Second Circuit, the Pedrara's case, 503F3 – excuse me, 503F3D162. I wanted to distinguish the Subhon case, actually, because the case – in that case, the visa had not already been denied. That was a pending, I believe, I-130. And that's a big factor that needs to be distinguished. Here, a visa had already been denied. Well, what happened to the lawyer that – or whoever it was that represented Hammett before the immigration judge? Oh. I actually don't have that information, Your Honor. I'm assuming he withdrew or counseled – or petitioner did not wish to continue with him. Maybe he didn't know what he was doing. Maybe. You know, maybe he was incompetent. You know, I went through – I'll just give you a little quick story. We have a process that I don't really care for, but we do it because sometimes the overarching principle is how do we get rid of the case? And so sometimes these hearing officers are in a hurry. Sometimes they don't care. Sometimes counsel come in, oh, we're not ready. May we have two-week continuance? Well, okay, let's see. I'll give you six months, you know. You see that all the time. So I don't know what the big hurry is over here, why we can't let him finish that appeal process. Well, I think that the idea wasn't in a big hurry. And granted, actually, a six-month continuance under false pretenses in this I mean, that appeal process of an already denied visa, I mean, that was separate from the removal of this individual. And so how long that would take, I mean, the IJ didn't abuse their discretion. And that is the standard by not granting this continuance. And I just – I reiterate that there wasn't good cause shown by Kushner to continue the case. There was no evidence presented of maybe why the appeal was a mistake or never argued why they thought they would likely prevail on the appeal. Even in the briefs currently, there's nothing to indicate why, very rightly so, maybe CIS made a mistake on this appeal – on this denial. Excuse me. I have 17 seconds. Are there any further questions? Thank you for your time, Your Honor. I've got lots of things, but I'll keep them to myself. Okay. Go ahead. Your Honor, I think we may have been out of time, so I will keep it brief. And if you have any questions. We may have been what? I think we may have been out of time. No? I'm seeing a shaking of the head. I'd like to address then the good cause argument that the government has raised now. And it's an argument that they raised for the first time in their appeals brief. It was something that was akin to the argument that was made in the Bull decision, where the government there argued that as a matter of looking to the evidence that was presented, the petitioner in Bull wasn't able to demonstrate that he'd be able to show hardship on his spouse who had filed, who had the I-130 petition in that case filed. But the court in Bull said that that was not the basis of the BIA's decision in this case. And the IJ certainly didn't ask him for evidence, didn't make this an evidentiary matter. The good cause argument that the government has proposed is simply an argument which they've, in which they're trying to attach now evidentiary obligations on the petitioner that were never really before the IJ or the BIA. It's not unlike the argument in the, or the decision in Abovian where the BIA came in and upheld the IJ's decision on the basis that the petitioner lacked credibility. But his credibility was never before the BIA as part of the appeal. So to hear the question of whether or not he had sufficient evidence to support the notion that his I-140 petition was going to eventually be successful was never initially raised with the IJ, or raised by the IJ. She never questioned what's the basis for your I-140. But I think opposing counsel said it wasn't raised by the petitioner's counsel either. But Judge Fogle indicated, well, this seems to be the responsibility of the IJ to explain. Even though the petitioner, I guess, doesn't say I've got a hot petitioner appeal. It's really a good one, and we're going to win. And so don't throw me out until I can get this heard. Even though he didn't say anything like that, apparently the IJ has to give some reason for not granting the continuance. Go ahead. And, Judge Thompson, you're right as to the reference made by Judge Fogle. And I think you asked about the basis for the factors that we're advocating for here. I think those are found in the Behrs decision that were ---- What about here? What was presented here? Well, in this case, what the Behrs decision said is the immigration judge must consider factors. It's not within the ambit of the petitioner to come forward with evidence that he's not ever given a chance to present. We can't simply assume that the immigration judge considers factors that it never lists in the record. It's the obligation of the immigration judge to go through the nature of the evidence provided, whether or not the petitioner engaged in unreasonable conduct which led to the delay, the number of prior continuances, and whether or not they allowed him a sufficient opportunity to pursue whatever evidence, in this case, the appeal that he was seeking to pursue. And, of course, you know, the Court can consider its own docket expediency, but it cannot do it to the exclusion of all of the facts. Would it have been enough if the judge had just said here, the petitioner hasn't presented any evidence as to the merits of the I-140 appeal, therefore has failed to carry his burden, therefore denied? Would that have been enough? That would be more like the situation we saw in Pedrero's, where the issue of what evidence was supporting his request for a continuance was squarely before the BIA, and the petitioner in that case said, Your Honor, I don't have that. So some transparency would have been enough. That's right. You know, I think in this case the transparency is to that issue, but you still have to, the IJ still has to, as a fundamental matter, address some of the most basic information. Right, but if you don't meet your burden as a petitioner, you lose. That's right. But you need to be given the opportunity to meet that burden. Right. And that's the process issue. That's exactly right. And that's what we contend happened in this case. And that's why we ask that this be remanded to the BIA so that the IJ can consider the factors that have been in place for more than 20 years. This is not a new standard. In the asylum cases, the same standard applies in Gula v. Gonzalez, for example. I'll stop. Thank you, Your Honor. Thank you very much.
judges: Pregerson, Thompson, Fogel